No. 32,336

COLLINGWOOD GRAIN COMPANY, *Appellee* and *Cross Appellant,* v. (O. Q. ELLIOTT, *Defendant*) W. P. HUSTON; *Appellant.*

(50 P. 2d 989)

Opinion filed November 9, 1935.

*H. W. Hart, Glenn Porter, Enos E. Hook* and *Getto McDonald,* all of Wichita, for the appellant.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for money. Plaintiff recovered. One of the defendants appeals and plaintiff cross-appeals.

The important question in the case is whether the action is one in contract or to recover on account of a tort. If it is an action in tort the statute of limitations has run and the judgment is wrong. For that reason the petition will be examined first.

The petition alleged that plaintiff at the time the cause of action arose was a grain company. Defendant Elliott was employed by it as a bookkeeper. Defendant Huston was in the business of recovering overcharges of railroads for various shippers. He had some claims of plaintiff's against the Chicago, Rock Island and Pacific Railway Company on a fifty percent contingent commission basis.

The petition further alleged that Elliott and Huston entered into a conspiracy by which Huston delivered to Elliott the checks received for these claims, and Elliott collected the amount of the checks and appropriated the money to his own use. A list of

checks, with the amount, number and date of each, was attached to the petition. This list amounted in the aggregate to $1,434.19. The petition also alleged that Huston acted in harmony with Elliott and received a portion of the proceeds of the checks and aided and assisted him in the collection of this money belonging to the corporation. The prayer was for a judgment against Huston and Elliott for the above amount.

Huston answered admitting the contract. The answer further admitted the collection of various claims against the railroads in behalf of plaintiff, alleged that all of these accounts were paid to the grain company as they were collected, and denied that Huston ever entered into any conspiracy with Elliott.

The case was tried before the court without a jury. The court found for the plaintiff and rendered judgment in its favor for $717.47.

The court filed a written decision in lieu of findings of fact and conclusions of law. The portion of this decision which is of interest to us is as follows:

"He collected $1,434.95 from the Rock Island Railway, represented by eighteen checks, which were made payable in each case to Collingwood-Moore Grain Company and mailed to Huston. Some of these checks Huston took to Hutchinson where they were indorsed by Elliott and cashed either in Hutchinson or Wichita and the proceeds divided between Huston and Elliott, and some of the checks were indorsed by Huston using either his own or Elliott's name as indorsing for the Collingwood-Moore Grain Company. None of the proceeds of any of these checks ever reached the Collingwood-Moore Grain Company.

"Later the Collingwood-Moore Grain Company was dissolved and the plaintiff partnership purchased the assets of the old corporation in June or July of 1926. This action was commenced in October, 1928.

"The two-year statute of limitations in fraud cases is not applicable here, even though the new partnership knew of these transactions at the time it purchased the corporation assets. One who appropriates moneys of another to his own use impliedly promises to repay the same. This being an action on implied contract, it is governed by the three-year statute and was brought within such period.

"This was an appropriation by Huston and Elliott of money belonging to the Collingwood-Moore Grain Company; in what proportions, I cannot say, but the fact remains that $1,434.95 collected by Huston was unaccounted for, and while he is entitled to his commission of fifty percent of this amount, there remains a balance of $717.47 for which he and his assistant Elliott are jointly and severally liable."

From the judgment based on this decision defendant Huston ap-

peals. The plaintiff cross-appeals, claiming that if Huston appropriated part of the $1,434.95 by fraud he is not entitled to retain any of it. There is no appeal by Elliott.

The first point made by defendant Huston is that the action is based on misappropriation of personal property and was barred within two years from the discovery of the misappropriation.

The third point is that the action cannot be construed to be an action on an implied contract. These two points will be considered together. There can be no doubt but that the action was brought more than two years after the discovery of the misappropriation of the money.

We have examined the pleadings and considered the evidence and the decision of the court. We have concluded that a fair interpretation to place upon the petition is that it is an action upon the contract entered into by Huston and the plaintiff whereby Huston agreed to collect certain claims for the plaintiff and pay plaintiff one half of what was collected. The petition sets out such a contract. The answer admits such a contract and pleads that it was carried out. The court's decision in effect finds such a contract and failure to pay. The relationship with Elliott that is pleaded amounts to but little more than anticipation of the defense of payment to Elliott. These allegations are a reply to that anticipated defense.

An official of plaintiff testified as follows:

"No, sir; not with me. And we talked at length about it, and he said, 'Well,' he says, 'Lee, I will admit that Elliott and I did do that,' he said, 'I sent Elliott his money to him personally, made the checks out to him,' and he said, 'you couldn't blame us for doing that the way things were going over there, they were losing so much money over there; that is, The Collingwood-Moore Grain Company, and we thought we just as well get ours,' and I says to Mr. Huston, 'Huston, we never got our money.' He said, 'No, you didn't get your money, but,' he says, 'I paid Elliott your part and I will see to it that you get it. I will make him pay you.'"

The conversation referred to in the above statement occurred between defendant Huston and the official. This evidence warranted the trial court in concluding that Huston instead of paying the fifty percent of the money collected by him to the company paid it to Elliott. This payment to Elliott was made under circumstances from which the trial court was justified in concluding that it did not constitute payment to the company.

Under such circumstances the rule laid down in 1 C. J. 1031 is in point. There it is said:

"If there is an express contract, and the same act or transaction constitutes both a tort and a breach of the contract, the injured party may waive the tort and sue on the contract; and the same rule obtains where a contract creates a relation out of which certain duties arise, a breach of which will constitute a tort."

*Denman v. Chicago, B. & Q. R. Co.,* 52 Neb. 140, was an action to recover damages to a shipment of cattle where the plaintiff had made a written contract with the railway company for their safe shipment. The question was whether the action had been begun in time. The court held that a fair interpretation of the pleading was that the plaintiff had waived his right to sue to collect pay for damages and elected to sue on the contract and that the action was brought in time.

In *Bates v. Bigby,* 123 Ga. 727, the question was whether the action was in contract or tort. A party had sued to recover for a pair of blankets which had been delivered to a cleaning establishment for cleaning and had not been returned. The court held that the action was on the contract. The court said:

"Where, however, a contractual relation exists between the parties, such as that of bailor and bailee, so that the latter rightfully obtains possession of the property, a tort arising out of a breach of the bailee's duty imposed by his relation may be waived by the bailor and assumpsit maintained, the reason being that the relation of the parties, out of which the duty violated grew, had its inception in contract." (p. 729.)

See, also, *Williams v. Rogers,* 110 Mich. 418. In the case under consideration the relationship of the parties grew out of the written contract that was pleaded.

Under this contract it was Huston's duty to pay fifty percent of the money collected to the company. He did not do this. Hence the company could sue him for breach of that contract. Since the action was begun within less than five years from the execution of the contract it was brought in time. It follows that appellant's contention cannot be maintained.

In the cross-appeal of plaintiff it claims that since Huston was guilty of fraud he was not entitled to retain any of the amount collected and the judgment should have been for $1,434.19, the entire amount collected rather than for only half that amount. That argument is not good, because recovery has been allowed on the ground that the action was on the contract rather than on account of fraud.

The judgment of the trial court is affirmed.